## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

CHANEL, INC.,

          **Plaintiff,**

v.                                    **No. 2:09-cv-02610-cgc**

SONG XU a/k/a SONG ZUJING a/k/a
SONGXU JING; ZHOU MUNIAO;
ZHOU PINGSEN; ZHOU ZHE;
WANG RUI a/k/a WA NG; CHEN
JIANJIAO, individually and jointly,
and DOES 1-10,

          **Defendants.**

## ORDER GRANTING CHANEL, INC.'S MOTION TO AUTHORIZE ALTERNATE SERVICE OF PROCESS ON DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(f)(3)

Before the Court is Plaintiff Chanel, Inc.'s ("Chanel") Motion to Authorize Alternate Service of Process on Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3), which requests to serve Defendants by electronic mail. (D.E. #12). The instant motion was referred to United States Magistrate Judge Charmiane G. Claxton for determination. (D.E. #16). For the reasons set forth herein, Chanel's motion is hereby GRANTED.

### I. Introduction

This case arises from Chanel's allegations that Defendants have committed federal trademark infringement and counterfeiting, false designation of origin, and cyberpiracy in violation of § 32, § 43(a), and § 43(d) of the Lanham Act, 15 U.S.C. §§ 1114 & 1125(a), (d). Specifically, Chanel

asserts that Defendants are illegally promoting, selling, offering for sale, and distributing products bearing exact copies of Chanel registered trademarks in the Western District of Tennessee through various fully interactive commercial internet websites ("Subject Domain Names").[1]

Subsequent to filing the instant Complaint, Chanel initiated an investigation into the name, physical address, electronic mail address, and other identifying information of Defendants.  Such information is required by the Internet Corporation for Assigned Names and Numbers ("ICANN") when an individual or entity registers a domain name.  See Chanel's Mot. to Authorize Alt. Service, Decl. of Stephen M. Gaffigan ("Gaffigan Decl."), Exh. 3.  Initially, Chanel retained Robert Holmes ("Holmes"), a licensed private investigator from Plano, Texas, to conduct WHOIS searches[2] regarding the Subject Domain Names.  See Chanel's Mot. to Authorize Alt. Service, Decl. of Robert Holmes ("Holmes Decl."), ¶¶ 3-4.  The WHOIS records identified the purported physical and email addresses of the Subject Domain names as set forth in Holmes' Declaration.  Id. ¶ 4.

Upon receipt of the registered physical locations of Defendants, Chanel's counsel requested Huang Yu Tin ("Ting"), an investigator in China, verify the accuracy of the physical contact addresses and research alternative addresses for Defendants.  Ting determined that none of the physical contact addresses provided by Defendants for any of the Subject Domain Names were valid.  See Chanel's Mot. to Authorize Alt. Service, Decl. of Huang Yu Ting ("Ting Decl."), ¶ 5.  Specifically, Ting stated that the addresses do not identify street names, numerical street addresses or building numbers and that the addresses interchange postal codes and sections for various cities.

---

[1]  The Subject Domain Names are listed in Schedule A to the instant motion.  See Chanel's Mot. to Authorize Alt. Service, Sch. A.

[2]  Holmes conducted the WHOIS searches of the Subject Domain Names through www.whois.domaintools.com, and attached true and correct copies to his Declaration.  See Chanel's Mot. to Authorize Alt. Service, Decl. of Robert Holmes ¶ 4.

Id.  Ting further conducted searches of several public databases and directories in China, including phone directories for each of the cities listed in the contact section of the WHOIS records for the Subject Domain Names, and was unable to find a valid listing or physical address for any of the Defendants.  Id. ¶ 6.  Holmes attempted to contact Defendants at the contact phone and fax numbers provided in the WHOIS data records for the Subject Domain Names and received "no answer."  Id. ¶ 7.

Chanel further investigated the contact email addresses for the Subject Domain names, which were listed as coldino@163.com and coldino@gmail.com.  On September 11 and 16, 2009, Holmes sent pretextual emails to Defendants Xu, Muniao, Pingsen, Zhe, Wang, and Jianjiao via the electronic mail address coldino@163.com.  Holmes Decl. ¶ 5 and Exh. 2.  On September 17, Holmes sent a pretextual email to Defendant Pingsen via the email address coldino@gmail.com.  Id. ¶ 6.  The emails were not returned as "undeliverable," which Holmes determined demonstrated that the email addresses were "valid," "operational," and "reliable."  Id. ¶¶ 5-6.  Further, Holmes received a "Return Receipt" for each of the emails, which demonstrated the precise date and time of the receipt of each email.  Id.  In addition to the ability to contact Defendants by the operational email addresses, the only contact information listed on each website operating under the Subject Domain Names is an email address; no physical address or telephone numbers are provided on any of the websites where customers can contact them or locate their business.  Gaffigan Decl. ¶ 5.

As a result of the information obtained in their investigation of Defendants, Chanel filed the instant motion requesting that the Court authorize service of process via electronic mail pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure.

## II.  Analysis

Federal Rule of Civil Procedure 4(f) ("Rule 4(f)") provides the acceptable means of serving individuals in a foreign country:

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person who waiver has been filed—may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service of Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>
> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>
> (C) unless prohibited by the foreign country's law, by:
>
> (I) delivering a copy of the summons and of the complaint to the individual personally; or
>
> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4 (emphasis added).  The Sixth Circuit has yet to consider the propriety of serving process by e-mail under Rule 4(f).  See Popular Enters., LLC v. Webcom Media Group, Inc., 225 F.R.D. 560, 561 (E.D. Tenn. 2004).  Nonetheless, the plain text of the Rule and case law from other circuits provide guidance about methods of service that are acceptable alternatives.  See, e.g., Rio Props. V. Rio Int'l Interlink, 284 F.3d 1007, 1016-17 (9th Cir. 2002).

4

Rule 4(f) provides that a party may use an alternative means to effect service if two conditions are met: (1) the party obtains the permission of the court, and (2) an international agreement does not otherwise prohibit the means of service approved. See Fed. R. Civ. P. 4(f)(3); Rio Props., 284 F.3d at 1014. The current text of the rule requires a party first to use "any internationally agreed means of service that is reasonably calculated to give notice," citing the method of service provided by the Hague Service Convention as an example. Fed. R. Civ. P. 4(f)(1). But see Rio Props., 284 F.3d at 1015 (interpreting a prior version of the rule in which the conjunction "or" appeared after subsection (1) and finding that the "court directed service is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)"). Only when "there is no internationally agreed means" or "an international agreement allows but does not specify [alternative] means" may a party effect service by the alternatives in subsections (2) and (3). See Fed. R. Civ. P. 4(f)(2). When subsections (2) and (3) apply, there is no hierarchy of service methods that a party must employ, as demonstrated by the use of the conjunction "or." See Fed. R. Civ. P. 4(f)(2)-(3). All alternative methods stand on an equal footing; and parties, along with the court, are free to choose any method as long as it is "reasonably calculated to give notice." Fed. R. Civ. P. 4(f)(2); cf. Rio Props., 284 F.3d at 1015 (analyzing a prior version fo Rule 4).

### A. The Hague Service Convention is Inapplicable

The first question is whether the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 [hereinafter Hague Service Convention], applies. If it does, Rule 4 requires the parties first to attempt service by the means designated in the Convention. See Fed. R. Civ. P. 4(f)(1). Both China and the United States have signed the Hague Service Convention. See Status Table:

Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Hague Conference on Private International Law, available at http://hcch.e-vision.nl/index_en.php?act=conventions.status&cid=17 (last visited Jan. 13, 2010) (listing the sixty current contracting states).  However, Article 1 of the Convention provides, "This Convention shall not apply where the address of the person to be served with the document is not known."  Hague Service Convention, art. 1.  Chanel has attempted to verify the addresses provided by Defendants on their websites and determined that each is fraudulent.  Because the addresses of Defendants are not known, the Hague Service Convention does not apply to the present suit.  Id.; accord BP Prods. N. Am., Inc. V. Dagra, 236 F.R.D. 270, 271 (E.D.Va. 2006) ("[T]he Hague Convention does not apply when a defendant's address is unknown."); Popular Enters., 225 F.R.D. at 562 (same).[3]

**B.  Service by E-Mail Comports with the Requirements of both Rule 4(f)(3) and Due Process**

Because the Convention does not apply, this Court has broad authority to determine an appropriate alternative method of service.  See Fed. R. Civ. P. 4(f)(2)-(3); Rio Props., 284 F.3d at 1015-16; BP Prods., 236 F.R.D at 271.  Any court-approved service method, however, must meet the constitutionally mandated due process requirements of "notice reasonably calculated, under all

---

[3]  The Hague Convention does not affirmatively prohibit service via e-mail.  Compare Fed. R. Civ. P. 4(f)(3) (prohibiting service of process if an international agreement prohibits the method chosen), with Hague Service Convention, art. 11 (allowing contracting states "to permit, for the purpose of service of judicial documents, channels of transmission other than those provided for" in the treaty), and Popular Enters., 225 F.R.D. at 562 (authorizing service by e-mail on foreign defendant located in the Hague Service Convention signatory state of Portugal).  No other international treaty appears to be implicated.

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (citations omitted). A method of service is constitutionally permissible as long as it meets these two tests. Id.

Serving Defendants by e-mail not only meets constitutional standards, but also is the method of service most likely to reach Defendants. Defendants have organized their online business so that the only way customers can contact them to place an order or lodge an inquiry is by e-mail. Although every physical address listed by Defendants proved to be fraudulent upon investigation, every e-mail account listed was active. This is hardly surprising. Any e-commerce merchant depends on electronic communication, and in particular e-mail, for his livelihood. See Alexandra Jacobs, Happy Feet: Inside the Online Shopping Utopia, The New Yorker, Sept. 14, 2009, at 67 (noting that most webmerchants "seem to be operated by spectral forces rather than human beings" because they handle customer service solely by e-mail). Even "e-business scofflaw[s]," Rio Props., 284 F.3d at 1018, must maintain valid e-mail accounts and check them regularly to receive new orders and provide customers with receipts and shipping information.

Although e-mail is a relatively new innovation, all sectors of the business community have adopted it quickly as a reliable, fast, and effective means of communication. Rio Props., 284 F.3d at 1017 (noting that the "business community" has "zealously embraced" e-mail.). The current Federal Rules of Civil Procedure specifically allow service by electronic means, where a party gains the consent in writing of the party to be served. See Fed. R. Civ. P. 5(b)(2)(E). The federal judiciary's own CM/ECF system alerts parties to a suit to new case filings and the court's rulings on pending motions by e-mail messages. As one court has aptly noted, "Courts . . . cannot be blind

to changes and advances in technology."   New England Merchs. Nat'l Bank v. Iran Power Generation and Transmission Co., 495 F. Supp. 73, 81 (S.D.N.Y. 1980).  Given these considerations, effecting service on e-commerce merchants at their preferred e-mail addresses comports with the Mullane standard and provides the greatest likelihood of generating a response from the served parties.  See New England Merchs., 495 F. Supp. At 81.  ("No longer must process be mailed to a defendant's door when he can receive complete notice at an electronic terminal inside his very office, even when the door is steel and bolted shut." (footnote omitted)); cf. Broadfoot v. Diaz (In re Int'l Telemedia Assocs., Inc.), 245 B.R. 719, 719-21 (Bankr. N.D.Ga. 2000) (first federal court decision authorizing service by e-mail).[4]

### III.  Conclusion

Because Chanel has diligently attempted to locate valid addresses for each named Defendant without success, the Court finds that alternative service of process is warranted.  The Court, therefore, DIRECTS Chanel to serve a copy of all pleadings on Defendants by e-mail at the known e-mail addresses— coldino@163.com and coldino@gmail.com.  Because Defendants' websites and e-mailed responses are in English, service in Mandarin or other foreign languages is not required at this time.  Cf. New England Merchs., 495 F. Spp. At 81 (requiring service upon Iranian state agency in Farsi).  After Chanel has completed service by e-mail, the Court DIRECTS Chanel to file an affidavit with the Clerk of Court reflecting its compliance with this order.  Should any Defendant

---

[4]  Service by e-mail does not appear to violate Chinese law.  Article 84 of the Civil Procedure Law of the People's Republic of China states that "[i]f the whereabouts of a recipient . . . is unknown . . . the document shall be served by public announcement."  Service by e-mail would not appear to conflict with this provision, and it is questionable whether service effected under Rule 4(f)(3) must always align with the methods authorized in the foreign country where service will take place.  See Rio Props., 284 F.3d at 1015 n.5 (noting that the advisory committee's note suggesting that a court may not authorize a service method that would violate the foreign state's laws only applies to service effected under Rule 4(f)(2)).

enter a formal appearance <u>pro</u> <u>se</u> or by counsel, service of process on that Defendant should revert to standard processes.  On these conditions, the Court GRANTS Chanel's motion for alternative service of process under Rule 4(f)(3).

      **IT IS SO ORDERED** this 27th day of January, 2010.

<u>s/ Charmiane G. Claxton</u>
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE